UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————————————
ADAM WALENTYNOWICZ,

        Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
———————————————————————

**MEMORANDUM & ORDER**
23-CV-3515 (HG)

**HECTOR GONZALEZ**, United States District Judge:

      In this appeal brought pursuant to the Social Security Act, 42 U.S.C. § 405, Plaintiff Adam Walentynowicz challenges the final determination of the Commissioner of Social Security (the "Commissioner") denying his application for supplemental security income. Both Plaintiff and the Commissioner have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. ECF Nos. 12, 15, 16 (Motions for Judgment on the Pleadings and Plaintiff's Reply). For the reasons set forth below, the Court remands this action to the Commissioner for further proceedings and development of the record in accordance with this Order. Accordingly, the Court grants Plaintiff's motion, and denies the Commissioner's motion.

## BACKGROUND

      Plaintiff filed his application for supplemental security income on December 4, 2019, when he was 33 years old, alleging that his bipolar disorder, anxiety, and depression limit his ability to work. ECF No. 9 at 73, 85, 104, 276 (Administrative Record, referred to herein as "AR").[1] Plaintiff completed his GED on June 6, 2005, and worked as a porter at a nursing home

---

[1] All citations to the parties' memoranda of law in support of their motions for judgment on the pleadings and reply refer to the internal pagination in those documents. *See* ECF Nos. 12, 15, 16. Citations to AR cite to the pages assigned by the Administrative Record.

from April 2004 through May 2006 and as a porter in an apartment building from June 2006 through July 2007. AR at 277. There is no evidence of subsequent employment in the record. Plaintiff's claim was initially denied on December 21, 2020, and was denied again upon reconsideration on June 15, 2021. AR at 73, 152–163, 170–183. On July 16, 2021, Plaintiff filed a written request for a hearing, and the Administrative Law Judge ("ALJ") held an online video hearing on January 26, 2022. AR at 73.

At the hearing, Plaintiff testified that he cannot work because his anxiety and depression cause him to have panic attacks that are more common when he is outside or around other people, that happen at least twice a week, and that take him 15-20 minutes to recover from, that he sleeps for up to 15 hours a day and struggles to wake up, that he feels paranoid on the streets, that he sometimes experiences aggressive behavior, and that his mood shifts from manic to depressed often. AR at 104–07. Plaintiff also explained that, when he is able to leave the house, he attends counseling three times a week and meets with his therapist at least once a month. AR at 106. During the hearing, an impartial Vocational Expert ("VE") also testified. After the ALJ described Plaintiff as someone with "no exertional limitations" who was "limited to simple tasks only, to occasional decision-making, and having only occasional interaction with supervisors, co-workers and the general public," the VE testified that there were certain unskilled jobs that Plaintiff would be able to hold. Upon questioning from Plaintiff's representative, the VE testified that Plaintiff could only be absent from the proposed unskilled jobs one day a month and still retain the job. AR at 110.

On February 14, 2022, the ALJ concluded that Plaintiff had not been under a disability within the meaning of the Social Security Act since the date he filed his application. AR at 87. As required by regulation, the ALJ's decision followed a five-step process to assess Plaintiff's alleged disability. Under this five-step process, an ALJ must determine:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe [physical or mental] impairment, or combination of impairments; (3) whether the impairment [or combination] meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of [her] past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing 20 C.F.R. § 416.920(a)(4)(i)–(v)).[2]

Specifically, the ALJ found that: (1) Plaintiff had not engaged in substantial gainful activity since December 4, 2019; (2) that he had certain severe impairments; but (3) that those impairments did not meet or medically equal the severity of the specified impairments; (4) that he had the residual functional capacity to perform a full range of work at all exertional levels, but that he could perform simple tasks only, engage in only occasional decision-making, and have only occasional interaction with others; (5) that he was unable to perform any past relevant work; and (6) that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.  AR at 75–86.  The VE specifically identified "Order Puller," "Cleaner," and "Hand Packager" as jobs that Plaintiff could perform and that existed in sufficient numbers in the national economy.  AR at 86.  In concluding that Plaintiff could successfully adjust to the other specified jobs, the ALJ considered Plaintiff's "residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines." AR at 86–87.  At the time the ALJ rendered this decision, the record contained medical opinions and prior administrative findings from five different doctors.

Dr. Jeanne Villani opined, in a report dated December 8, 2020, that Plaintiff had no limitations in sustaining an ordinary routine, that he had mild limitations in using reason and

---

[2]    Unless noted, case law quotations in this Order accept all alterations and omit internal quotation marks, citations, and footnotes.

3

judgment to make work-related decisions, and that he had moderate limitations in understanding, remembering, and applying instructions. AR at 83, 4233–37. The ALJ found Dr. Villani's opinion to be "not persuasive" because it was inconsistent with the record as a whole, with the opinions of other medical providers, and with examination findings. AR at 83–84.

Dr. Abrah Sprung opined, in a report dated June 2, 2021, that Plaintiff had no limitation in understanding, remembering, or applying simple instructions but that he had mild to moderate limitations in understanding, remembering, or applying complex directions and instructions, sustaining concentration, and performing a task at pace. Dr. Sprung noted that Plaintiff had moderate to marked limitations in his ability to interact adequately with supervisors, coworkers, and the public, regulate emotions, control behavior, and maintain wellbeing. Dr. Sprung also stated that Plaintiff's limitations "may significantly interfere with [his] ability to function on a daily basis." AR at 84, 4432–37. The ALJ found Dr. Sprung's opinion to be persuasive since it was supported by a detailed report and consistent with the record as a whole.

Dr. Usha Tandon, Plaintiff's treating physician, opined, in a report dated October 7, 2021, that Plaintiff was able to take care of himself but that his social function was limited and that he was unable to function in public settings because of his anxiety, panic attacks, and inability to deal with stress. AR at 84, 4442-56. Dr. Tandon also opined that in a work setting Plaintiff's anxiety, paranoia, and poor stress tolerance would make him unable to follow a routine and make it difficult for him to deal with people. AR at 4444. Dr. Tandon noted that Plaintiff has panic attacks when faced with the public. *Id*. Dr. Tandon also completed a Medical Source Statement of Ability to do Work, in which she opined that Plaintiff had marked limitations in understanding, remembering, and carrying out complex instructions, mild limitations interacting appropriately with the public, moderate limitations interacting appropriately with supervisors and co-workers, and moderate limitations responding

4

appropriately to usual work situations and changes in a routine work setting. AR at 4450–51. The ALJ found Dr. Tandon's opinion to be mostly persuasive, noting that only her opinion that Plaintiff was "unable to function" in public settings was not persuasive because it was contradicted by Plaintiff's own description of his symptoms and his activities of daily living as well as other opinions on the record. AR at 84.

Two additional doctors, State agency medical consultant Dr. E. Gagan, in a report dated December 14, 2020, and State agency medical consultant Dr. M. Butler, in a report dated June 15, 2021, expressed substantially similar opinions. Both Dr. Gagan and Dr. Butler opined that Plaintiff had moderate limitations in understanding, remembering and applying information, interacting with others, concentrating, persisting and maintaining pace, and adapting or managing himself. AR at 113–28; 140–49. Both doctors stated that Plaintiff was limited to "a job working simple tasks." AR at 120, 140. Dr. Gagan and Dr. Butler also found that Plaintiff's abilities "to maintain attention and concentration for extended periods," "to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances" and to "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods" were "moderately limited." AR at 123, 144–45. The ALJ found Dr. Gagan's and Dr. Butler's opinions to be persuasive because they were supported by the record as a whole and by detailed rationale.

According to the physicians that the ALJ found to be persuasive, Plaintiff struggles with bipolar disorder, polysubstance abuse, anxiety, and depression, which require multiple daily medications, methadone maintenance therapy, and counseling. ECF No. 12 at 3–8; ECF No. 15 at 5–10.

5

On March 15, 2023, the Appeals Council denied Plaintiff's request that it review the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. AR at 8–14. In its letter denying Plaintiff's request, the Appeals Council acknowledged that Plaintiff had submitted additional evidence in the form of medical records and an updated medical source statement but concluded that the evidence did not "show a reasonable probability that it would change the outcome of the decision." AR at 9. The updated medical source statement that Plaintiff submitted was from Dr. Tandon, his treating physician, and was dated January 9, 2023 (the "January 2023 Statement"). AR at 93–96. In that statement, Dr. Tandon opined that if Plaintiff was employed, he would miss "5+" days of work per month due to "medical conditions, appointments, etc." AR at 93. She also opined that he "cannot work due to extreme anxiety + paranoia." AR at 94.

Plaintiff filed his complaint in this action seeking review of the ALJ's decision on May 10, 2023, and filed an amended complaint on May 10, 2023. ECF No. 1 (Complaint); ECF No. 3 (Amended Complaint). Plaintiff moved for judgment on the pleadings on October 30, 2023, and defendant moved for judgment on the pleadings on December 27, 2023. ECF Nos. 12, 15. Plaintiff filed his reply in support of his motion on January 26, 2024. ECF No. 16.

## STANDARD OF REVIEW

When a plaintiff challenges an ALJ's decision, the Court must "conduct a plenary review of the administrative record" and determine "whether the ALJ applied the correct legal standards and whether the ALJ's determination is supported by substantial evidence." *Rucker v. Kijakazi*, 48 F.4th 86, 90–91 (2d Cir. 2022).

"The substantial evidence standard is a very deferential standard of review—even more so than the clearly erroneous standard." *Schillo v. Kijakazi*, 31 F.4th 64, 74 (2d Cir. 2022). But the standard is "not merely hortatory: It requires relevant evidence which would lead a

6

reasonable mind to concur in the ALJ's factual determinations." *Colgan v. Kijakazi*, 22 F.4th 353, 359 (2d Cir. 2022). The Court is therefore "required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Schillo*, 31 F.4th at 74. Once an ALJ has made findings of fact, however, the Court "can reject those facts only if a reasonable factfinder would *have to conclude otherwise.*" *Id.* (emphasis in original). Put another way, "[i]f evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *Id.* Although an ALJ is not required to "reconcile[]" "every conflict in [the] record," the ALJ must describe "the crucial factors in any determination . . . with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). However, "[w]hen there are gaps in the administrative record or the ALJ has applied an improper legal standard, [the court has], on numerous occasions, remanded to the [Commissioner] for further development of the evidence." *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

## DISCUSSION

Plaintiff contends that: (1) the ALJ committed reversible error when he failed to consider the number of monthly absences from work that Plaintiff would necessarily have as a result of his impairments and treatment; and (2) the Appeals Council erred in "not exhibiting" the January 2023 Statement and concluding that there was not a reasonable probability that it would change the outcome of the decision. ECF No. 12 at 14, 18. The Commissioner, however, argues that the ALJ had no obligation to consider potential workplace absences because, at the time he issued his decision, no physician had submitted an opinion outlining such limitations and that the Appeals Council reached the correct conclusion with respect to the January 2023 Statement. ECF No. 15 at 17–24. As explained below, the Court agrees with Plaintiff that the ALJ's

decision did not adequately account for any potential absenteeism and that the Appeals Council erred in concluding that there was not a reasonable probability that the January 2023 Statement would change the outcome of the decision.

### I. The ALJ Erred in Failing to Address and Develop the Record Regarding Plaintiff's Absenteeism

Plaintiff argues that Plaintiff's treating physician, Dr. Tandon, and the psychiatric consultants, Drs. Gagan and Butler, all identified limitations in Plaintiff's abilities that should have required the ALJ to consider the number of monthly absences that Plaintiff would have from any job at which he was employed. ECF No. 12 at 14–15. Defendant disagrees, arguing that "the ALJ had no obligation to consider workplaces [*sic*] absences because, at the time of the decision, no physician had submitted an opinion outlining such limitations." ECF No. 15 at 17. While there was not, at the time the ALJ made his decision, a clear physician opinion stating the exact number of absences Plaintiff was likely to require on a monthly basis, physician opinions that the ALJ found persuasive did suggest that absenteeism might interfere with Plaintiff's employment.

Dr. Tandon opined that, in a work setting, Plaintiff's limitations would make him "unable to follow a routine."[3] AR at 4444. Dr. Gagan and Dr. Butler opined that Plaintiff's abilities "to maintain attention and concentration for extended periods," "to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances" and to "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest

---

[3]  The Court is aware that the ALJ found Dr. Tandon's opinion to be "mostly persuasive." Because the only part of Dr. Tandon's opinion that the ALJ identified as "unpersuasive" was her finding that Plaintiff was "unable to function," the Court infers that that the ALJ found the rest of Dr. Tandon's opinion to be persuasive and "consistent with the record." AR at 84.

8

periods" were "moderately limited." AR at 123, 144–45. However, the degree to which Plaintiff is practically limited is unclear here because none of the physician opinions quantified how these "moderate" limitations would affect his ability to attend and perform at his job, and the doctors were seemingly not asked to provide further clarification. This information was undoubtedly relevant to the ALJ's ultimate conclusion—the ALJ's determination of Plaintiff's residual functional capacity did not reference any absenteeism, and in testifying that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, the VE also testified that Plaintiff could only be absent from the proposed jobs only one day a month and still retain the job.

"Where, as here, there is evidence of . . . absence limitations and there is ambiguity as to what extent Plaintiff is limited, it is the duty of the ALJ to develop the record." *Rivera v. Comm'r of Soc. Sec.*, No. 21-cv-1193, 2022 WL 4482374, at *3 (E.D.N.Y. Sept. 27, 2022) (holding that the ALJ had a duty to develop the record when plaintiff's medical records identified moderate limitations in "maintaining regular attendance at work, adhering to a schedule, maintaining attention and concentration for extended periods, and completing a normal workday without interruptions or unreasonable lengths of rest period"); *see also Matos v. Comm'r of Soc. Sec.*, No. 20-cv-10686, 2022 WL 3084512, at *7–8 (S.D.N.Y. June 16, 2022) (ALJ who credited doctor's assertions that plaintiff was "moderately limited in his abilities to: (i) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; and (ii) complete a normal workday and workweek without interruptions from psychologically based symptoms" needed to "address the interplay between" those limitations and "the limitations concerning absenteeism . . . identified by the [VE] that would preclude employment," and his failure to explain how an individual with those moderate limitations "would be able to sustain employment in light of the [VE's] testimony" was "not a

9

harmless error"), *report and recommendation adopted*, 2022 WL 3084404 (Aug. 3, 2022). Indeed, "even when, as here, the claimant is represented by counsel," "[i]t is the rule in our circuit that the ALJ, unlike a judge in a trial, must himself affirmatively develop the record." *Pratts* 94 F.3d at 38; *see also Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508–09 (2d Cir. 2009) ("[U]nlike a judge in a trial, [an ALJ] must . . . affirmatively develop the record [on behalf of the claimant].").

Accordingly, the Court finds that, in light of the VE's testimony and physician opinions that raised potential absenteeism issues, the ALJ's failure to develop the record as necessary to allow him to address the open issue around how many days of work Plaintiff would miss in a month was legal error.  This error is not harmless—a finding that Plaintiff needed to miss more than one day of work each month because of his impairments, would have rendered him unable to keep any of the jobs identified by the VE.  *See, e.g., Santos v. Kijakazi*, No. 21-cv-1682, 2022 WL 4354372, at *10 (S.D.N.Y. Sept. 20, 2022) (holding that ALJ's failure to reconcile medical opinions regarding Plaintiff's limitations with the VE's testimony was not harmless error when absenteeism would render plaintiff "unable to obtain any of the jobs identified by the VE").

**II.    The Appeals Council Erred in its Conclusion Regarding the January 2023 Statement**

Under 20 C.F.R. § 416.1470(a)(5), the Appeals Council "will review a case" if it receives "additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision."  The Court's review is governed by the same standards.  *Jecca v. Kijakazi*, No. 20-cv-5598, 2022 WL 6562699, at *11 (S.D.N.Y. Aug. 23, 2022), *report and recommendation adopted*, 2022 WL 4298706 (S.D.N.Y. Sept. 19, 2022).  If the Court determines that the Appeals Council has failed to fulfill its obligations, "the proper course for the reviewing

10

court is to remand [to the ALJ] for reconsideration in light of the new evidence." *Graham v. Berryhill*, 397 F. Supp. 3d 541, 557 (S.D.N.Y. 2019).

Defendant acknowledges that the January 2023 Statement "is new" since it was created after the ALJ's decision and relates to the relevant period, but argues that the Appeals Council correctly concluded that it was not material because there was no reasonable probability that it would change the outcome of the ALJ's decision. ECF No. 15 at 22. While of course there is no guarantee that the January 2023 Statement would have changed the ALJ's conclusions, the standard the Court must apply and that the Appeals Council should have applied is "reasonable probability," not certainty. 20 C.F.R. § 416.1470(a)(5).

In the Court's view, the January 2023 Statement meets that standard—if the ALJ had had the opportunity to review the January 2023 Statement, it is reasonably probable that, consistent with the Court's holding in Section I, *supra*, he would have reached a different conclusion regarding either Plaintiff's residual functional capacity or whether Plaintiff could perform the jobs put forward by the VE. *See, e.g., Santos*, 2022 WL 4354372, at *8–9 (where physicians found that plaintiff had certain "moderate limitations" and one physician estimated that plaintiff's "impairments would cause her to be absent from work more than three times per month," the ALJ was "obligated to address and reconcile [those absences] with the VE's testimony in coming to his RFC assessment"). Indeed, Defendant even implicitly acknowledges that this is the case, stating in its motion that "the ALJ had no obligation to consider workplaces [*sic*] absences because, at the time of the decision, no physician had submitted an opinion outlining such limitations," suggesting that had such an opinion been submitted to the ALJ, he would have been required to consider any potential issues with absenteeism. ECF No. 15 at 17. Accordingly, the Appeals Council's decision was not harmless error, and remand is required to allow the ALJ to consider the January 2023 Statement. *See, e.g., Jecca*, 2022 WL 6562699, at

11

*14 (remanding where Plaintiff offered new evidence to the Appeals Council that could have, under a "reasonable probability" standard, changed the outcome of the action at the hearing level); *see also Davis v. Saul*, No. 19-cv-2973, 2020 WL 2094096, at *13 (S.D.N.Y. May 1, 2020) (remanding for the ALJ to consider new evidence from plaintiff's treating physician where the Appeals Council provided only a "boilerplate" explanation for its decision "not to consider" the evidence).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion, *see* ECF No. 12, is granted and the Commissioner's cross-motion, *see* ECF No. 15, is denied. The case is remanded to the ALJ, pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings consistent with this Order. The Clerk of Court is respectfully directed to enter judgment consistent with this Order.

SO ORDERED.

       */s/ Hector Gonzalez*
       HECTOR GONZALEZ
       United States District Judge

Dated: Brooklyn, New York
       June 13, 2024